[Sac. No. 4764. In Bank.—October 25, 1933.]

FESTA DO DIVINO ESPERITO SANTO DE MANTECA, MANTECA, CALIFORNIA, INCORPORATED (a Corporation), et al., Respondents, v. FRANK A. MENDES et al., Appellants.

A. Q. Lomba and Case & Forslund for Appellants.

Law T. Freitas and Charles H. Epperson for Respondents.

SEAWELL, J.—Respondent-plaintiff, Festa Do Divino Esperito Santo de Manteca, a semi-religious association, filed its articles of incorporation in the office of the Secretary of State on April 17, 1925, and has since existed as a nonprofit corporation, with its principal place of business at Manteca, California, pursuant to the provisions of title 12, part. 4, division 1, of the Civil Code. Its corporate purposes, as set forth in its articles of incorporation, are to celebrate on proper days the Feast of the Divine Holy Ghost and the Feast of the Divine Holy Trinity and to perpetuate the precepts of the religion of its members, as practiced by their forefathers; to hold such real and personal property as the purposes of the corporation may require, and to that end lease, mortgage, hypothecate, sell and otherwise dispose of lands, tenements, hereditaments and personal property; to make by-laws for the management of its properties, and the regulation of its affairs, and its membership; to admit persons into membership, and to hold periodical or occasional conventions and general assemblies of both members and delegates.

The number of directors was fixed at five, and J. J. Machado, M. M. Alameda, J. A. Mendosa, George Williams and J. S. Marks were named as the original five directors. Many years before any steps were taken to incorporate it had been the annual custom of the Portuguese population

in the neighborhood of Manteca, which seems to have been quite numerous, to meet and celebrate the feasts above named. It was also the custom to meet in frequent social assemblage at other times during the year. The celebration of the Feast of the Divine Holy Ghost was a religious ceremony in the form of a thanksgiving acknowledgment for divine favors. It also had a social and good-will aspect. At other times during the year said persons of Portuguese birth and extraction met purely for social purposes. Prior to filing articles of incorporation the voluntary association or assembly seems to have been governed by five directors or trustees. It also had certain executive or administrative officers, to wit, a president, vice-president, secretary and treasurer. The association during its noncorporate existence grew in numbers and accumulated quite a sum of money from donations made by its members and those in sympathy with its social and religious activities. With these accumulated funds a building site was purchased in Manteca, upon which an eating house and chapel were erected. Thereafter there remained on hand a surplus of approximately $4,000. Immediately upon incorporation, on April 17, 1925, the directors or trustees of the association—the holders of title—conveyed said real property and transferred such moneys and personal property as had come into their possession to the corporation. Said corporation continued to conduct the business of the association in much the same manner after incorporation as it had been conducted before incorporation until the adoption of the by-laws, which it was claimed by respondents, and found by the court, was consummated at the meeting held on the evening of April 24, 1929.

Whether said by-laws were legally adopted is conceded to be the question decisive of the rights of the contending parties. The appellants take the stand that said by-laws were never legally adopted and that respondents, who assert themselves to be the lawful directors of said corporation by virtue of the provisions of said by-laws, are not such in right, and therefore are not entitled to manage or control the property of said corporation. Appellants further claim that the only *bona fide* by-laws of the corporation are those which they allege were adopted on March 22, 1931. They claim the right to exercise corporate power under said alleged by-laws. The soundness of this claim will receive notice in

the course of our opinion. Appellants, with the apparent co-operation of a large number of followers, took by force the possession of the real and personal property of said corporation, to the exclusion of respondents, changed the locks on the doors of the halls and other buildings; committed waste by breaking locks and doors and damaging personal property; reported falsely to the bank in which said corporation deposited its moneys and transacted its business that said respondent directors were without authority to transact any business whatsoever in behalf of or in the name of said corporation, and circulated false reports which affected the credit of said corporation, and which tended to confuse the public mind as to the legal status of the *bona fide* directors of said corporation. The effect of appellants' acts was undoubtedly such as would tend to impair the credit of said corporation, obstruct said respondent directors in the transaction of the business of the corporation, and confuse the public mind as to respondents' right to manage or control the business of the corporation.

It is not necessary to dwell upon the extent of the schism which divided the two factions contending for control, except to state that that which seemed at first to be but mere differences of opinion as to matters of fraternal policy developed into a state of belligerency which exhibited itself in violent and boisterous fashion at several meetings called for the purpose of determining which faction was properly in control of the directorship and the offices of the corporation.

The trial court, responsive to the prayer of the complaint, upon allegations fully sustained, issued its decree enjoining the appellants from enforcing or attempting to enforce the provisions of the by-laws pretended by appellants to have been adopted March 22, 1931, and from circulating said by-laws, as the by-laws of said corporation, and in brief, without enumerating specifically the many acts enjoined, it is sufficient to observe that the decree enjoins the interference by appellants with the government, control, or the transacting of the business of plaintiff corporation by plaintiff directors and their successors in office, or the management and control of the real property of said corporation by them. No damages were allowed on account of the breaking of the doors of the buildings and the waste committed by

appellants as alleged in the amended complaint, for the reason that said claim was withdrawn and dismissed by respondents. The decree found that waste had nevertheless been committed and the appellants were enjoined from the commission of future waste.

At this point an inconsistency in the position of appellants may be pointed out, in that they challenge by their arguments herein the existence of the original by-laws adopted April 24, 1929, under which respondent board claims to deraign its powers, or the existence of any by-laws whatever, prior to the adoption of appellants' alleged by-laws, notwithstanding their pleadings and the language of the by-laws under which they assume the right to administer the affairs of the corporation are in fact premised upon the by-laws *as amended.* The final paragraph of the by-laws, adopted March 22, 1931, upon which appellants assert their right to control the affairs of the corporation, contains the following language:

"We, the undersigned, members of the special committee named at the last annual meeting, at Manteca, California, on the 27th day of July, 1930, *to correct, amend, alter and modify the by-laws of the* Festa Do Divino Esperito Santo de Manteca, . . . have the pleasure of submitting for your *approval* the laws above mentioned, which we expect will contribute to the progressive development of the said society." (Italics supplied.) The only attempts made by said nonprofit corporation at adopting by-laws were the two above set forth.

■ Amendments cannot be adopted without the acknowledgment of a pre-existent original. We have underscored the word "approval" as an answer to the objection made by appellants to the use of the same word used by the framers of the by-laws of April 24, 1929, as being insufficient to give validity to said by-laws. Appellants' by-laws would fail tested by the same rule which they would apply to respondents. It is very clear from the context of the by-laws and the nature of the proceedings that the word "approval" was given the meaning of the word "adoption". Read in connection with the subject matter no other reasonable construction can be placed upon it.

It would seem that prior to incorporation the membership of the association was indefinite as to the personnel, as those

only who contributed a small membership fee or not less than fifty cents annually or its equivalent in provisions, to be consumed at the feast, were regarded as members during the particular year for which the payment was made. No permanent record of the membership was kept. The membership fluctuated with each year during the nonincorporate existence of the association. The annual attendance upon the feast, however, was usually quite large.

The property interests of the association and its general affairs had grown to such proportions in 1929 that it became essential, especially in view of the plan to borrow money and properly to conduct its affairs, that the corporation, which had existed approximately for a period of four years without having adopted any by-laws or rules of conduct, should take that necessary step. In fact, the bank with which the association was negotiating for a loan of $6,500 required the adoption of by-laws before it would consider the loan proposition. The directors who had been elected at the regular annual meeting held in 1928, and who were still serving as such, called a meeting for the purpose of adopting by-laws by mailing postal cards to each person affiliated with the organization. The notices were mailed out April 8th, setting April 24th as the day on which said meeting would be held. On the appointed day some fifty or sixty members responded to the call. Lengthy and acrimonious discussion featured the session. Article XVII, which prescribed the qualifications of membership, was the particular article around which the discussion centered. The trial court found upon conflicting and confusing evidence that said article was adopted, after some revision, with the other articles, all of which together constituted the by-laws of the corporation. During the sessions the inquiry was made whether the signers of the by-laws would be liable for the debts of the corporation, and it being openly stated that they would be liable for the corporation's indebtedness, a large number of the participants refused to sign the by-laws and left the meeting. Some twenty-nine members, including a majority of the directors, signed the by-laws which governed the corporation without challenge until a short time before the present action was filed by plaintiffs for injunctive relief, which was more than two years after the

adoption of said by-laws. Said by-laws were thereafter accepted by common consent as the by-laws by the officers and members of the association without question, and all the business of the corporation was transacted in the manner therein provided.

As a result of the adoption of the by-laws the directors were enabled to negotiate a loan from a local bank for the benefit of the corporation in the sum of $6,500, secured by a trust deed of the corporation's property. Said directors pledged their personal credit as additional security for said loan. Moneys were collected and disbursed, all manner of business was transacted, officers were elected to various stations, and the property of the corporation was held, managed and controlled by the corporation acting by virtue of the authority conferred by said by-laws until the forcible ejection heretofore mentioned. At no time has a direct attack been made by appellants by the assistance of a writ of *quo warranto* or any other appropriate writ to test the eligibility of the corporation's officers, or the validity of said original by-laws.

In view of the finding of the court upon conflicting evidence that the original by-laws were legally adopted and have not since been superseded by any other by-laws, or amendments thereof, it is unnecessary to discuss the method by which said by-laws of March 22, 1931, were adopted.

It is not improbable but that this whole matter has become moot. The controversy arose more than two years ago, involving a transient matter, to wit, as to which set of directors was legally in control and management of the affairs of a nonprofit corporation. The officers are elected annually, and the by-laws are subject to change at the will of the members. At least two elections have since been held, and the by-laws if not framed to serve the interests of the membership, could have and should have been changed to reflect the will of the majority.

We do not assume to pass judgment upon the merits of the controversy which gave rise to the disputes between the parties. Upon an examination of the record we are of the view that, while the evidence is conflicting, it is sufficient to support the trial court's judgment.

■ The attempt of the appellants to dismiss the action was unauthorized and therefore properly denied.

Judgment affirmed.

Thompson, J., Curtis, J., Preston, J., Langdon, J., and Waste, C. J., concurred.